UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WFK & ASSOCIATES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-6684** |
| **CITY OF HAMMOND AND PARISH OF TANGIPAHOA** | **SECTION T(1)** |

Before the Court is a Motion for Summary Judgment (Document 67) filed on behalf of WFK & Associates, LLC ("WFK"). The parties waived oral argument and the matter was taken under submission on October 31, 2007. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises GRANTS WFK's Motion for Summary Judgment for the following reasons.

## ORDER AND REASONS

### I.      BACKGROUND

WFK is the owner of approximately 44 acres of raw, undeveloped land located in an unincorporated area of Tangipahoa Parish (the "Property"). WFK seeks to develop a 300 unit apartment complex (the "Project") at an estimated cost of $40,000,000.00, to be called Boardwalk Apartments. As the Property is not within the corporate limits of any town, city or

municipality, it is subject exclusively to the land use regulations and authority of the Parish of Tangipahoa. In addition, it is not subject to any type of comprehensive zoning scheme or land use plan. Rather, development within the parish is subject only to the rules and regulations set forth in the "Subdivision Regulations" of the Parish of Tangipahoa.

On July 11, 2006, in compliance with the Tangipahoa Parish Subdivision Regulations, the plaintiff applied for preliminary approval from the Tangipahoa Parish Planning Commission ("Planning Commission"), subject to securing approvals from four other regulatory bodies in respect of drainage, wetlands, fire safety and health.

Upon learning of the proposed development, the City of Hammond filed suit against WFK, its affiliates involved in the Project (Great Southern Investment and Asset Management, Inc. ("Great Southern") and Cameo Development ("Cameo")) and the Parish of Tangipahoa in the Louisiana Twenty-First Judicial District Court seeking an injunction to prohibit the construction of the complex. On November 21, 2006, the case was tried and the Court denied the City's application for declaratory judgment, as well as the requested injunctive relief. However, the state court ordered certain modifications to the Parish's usual permitting procedures. Specifically, the Court ordered that upon the application for final approval, "the Tangipahoa Parish Council-President Government shall hold a duly and legally noticed public hearing before the Tangipahoa Parish Council, rather than the Planning Commission, at which hearing the public shall be given an opportunity to participate by allowing public comments on said application and issuance of final approval on the permit for the Boardwalk Apartment development."

WFK followed these "amended" procedures, reserving the position that the state court exceeded its authority in rewriting the Parish's procedures. Currently pending before the Louisiana First Circuit Court of Appeal are devolutive appeals, taken on behalf of the Parish of Tangipahoa, WFK and the City of Hammond, which question the legality of that portion of the court's judgment ordering the Tangipahoa Parish Council to hold the hearing on the application for final approval, rather than the planning commission.

In obedience to the court's order, the Council scheduled the public hearing for January 8, 2007, after Cameo, on behalf of WFK, filed the application for final approval. At the hearing, numerous parties appeared to comment on the application. Thereafter, the Tangipahoa Parish Council denied WFK's final application for approval (i.e. the issuance of a building permit, which would have allowed WFK to begin construction).

On September 28, 2006, WFK filed a Complaint in this Court against the City of Hammond and the Parish of Tangipahoa[1]. Subsequent to the judgment of the Louisiana Twenty-First Judicial District Court, WFK moved to dismiss the City of Hammond as a party defendant and amended its Complaint, leaving the Parish of Tangipahoa as the sole defendant asking for (1) a judgment declaring that its final application for subdivision approval complies with all laws and regulations of the parish and is therefore approved; (2) a writ of mandamus requiring the parish to grant final approval of the final application for subdivision approval and to issue a

---

[1] On December 11, 2007, the Court ordered the parties to file supplemental memoranda addressing the issue of abstention as it relates to this case. After reviewing the memoranda, the Court has determined that no abstention doctrine applies in this matter as resolution of the state court litigation will not dispose of the issues before this Court. Kenner Acquisitions, LLC v. Bellsouth Telecommunications, LLC, 2007 WL 625833 (E.D. La), citing Lumen Const. Inc. v. Brant Constr. Co., Inc., 780 F.2d 681, 695 (7th Cir. 1985).

building permit to WFK and (3) for undisclosed damages.

## II.     LAW AND ANALYSIS

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Stults v. Conoco, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis supplied); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995). Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Id. at 588. WFK contends that it is entitled to summary judgment in this matter as there are no material facts in dispute.

The process by which a landowner obtains a building permit in the unincorporated parts of Tangipahoa Parish is regulated by regulations which are found in a book entitled "Subdivision

Regulations." Under the Tangipahoa Parish Subdivision Regulations, a developer wishing to develop property in the Parish first files an application for preliminary approval of a project. According to the Section of the Regulations Entitled "Preliminary Approval," the matter is then docketed before the Planning Commission, advertised, and a public hearing is held. The developer then files for final approval. In order to receive final approval, the developer must submit the following:

> 1) Construction plans with a vicinity map.
> 2) A statement of the total number of acres being developed.
> 3) Total number of lots or apartments.
> 4) Approval from the State Board of Health and Hospitals.
> 5) Approval from the Drainage Board.
> 6) Streets in apartment/duplex complexes (2 duplexes or more) shall be named and have a 911 address prior to final approval.
> 7) Wetland Determination Letter from the Corps of Engineers shall be submitted for Apartments, Town Homes, Condominiums, Manufactured Homes Parks and Recreational Camping Grounds before final approval.

Tangipahoa Parish Subdivision Regulations, p. 24.

In addition to these requirements, for an apartment complex, the developer must also demonstrate compliance with the following requirements:

> a) Adequate mini-dumps for solid waste disposal.
> b) Approval from the State Fire Marshal's office if required.
> c) Fences and/or green space may be required.
> d) Maximum density – 18 units per acre.

Tangipahoa Parish Subdivision Regulations, p. 25.

At the July 11, 2006 meeting of the Planning Commission, the Project was granted preliminary approval. The Project's final approval was contingent upon four things: WFK receiving approval of the Project from the Corps of Engineers, the Fire Marshall, the Board of

5

Health and the Drainage Board. As evidenced by the declarations and exhibits attached to WFK's Motion for Summary Judgment, the Project complied with all Parish requirements. On November 28, 2006, WFK submitted its application for final approval to the Parish Council, pursuant to the order from the state court litigation. At this meeting, the Parish Council denied final approval of the project. WFK argues that the denial is directly contrary to and in violation of both the Subdivision Regulations of the Parish and the preliminary approval received by WFK on July 11, 2006.

A Parish has no discretion in following its own regulations in approving developments. See Folsom Road Civic Association v. Parish of St. Tammany, 425 So.2d 1318, 1320 (La. App. 1 Cir. 1983). When a parish applies its building requirements to a specific project, such action is "enforcement" of those rules and is thus not a legislative function. Bryan v. City of Madison, 213 F.3d 267, 273 (5th Cir. 2000). As such, once the Parish implemented a regulation mandating final approval after certain prerequisites were met, the Parish Council had no option but to follow its regulations when deciding on the final application of WFK.

The issuance of a building permit is no longer a discretionary act in Louisiana, as the building code statute (La. R.S. 33:4773) was amended to remove such language. *See* Acts 2005, 1st Ex. Sess., No. 12, and Moyse v. City of Baton Rouge, 938 So.2d 1013 (La. App. 1 Cir. 6/9/06). Further, when an applicant complies with applicable law for the issuance of a building permit a court has the authority to require the governmental entity to issue the permit. In Flex Enterprises, Inc. v. City of New Orleans, 780 So.2d 1145 (La. App. 4 Cr. 2/14/2001), the court ordered the issuance of a building permit when the plaintiff showed it complied with all

applicable ordinances. In that case, New Orleans denied the plaintiff a building permit under the guise that it was not a health club, which is a permitted use for the zoning of the property. The court found such a determination by the city was arbitrary and capricious and ordered the issuance of the permit.

> If certain establishments are to be prohibited in an area either because they include certain items that seem inconsistent to zoning officials with the permitted uses of the zoning classification or because a certain percentage of the establishment is not devoted to a particular purpose, such rules must be clearly set forth in the official zoning ordinance, not imposed on a case-by-case basis. Id. at 1152.

The treatment of the plaintiff in Flex Enterprises is very similar to that of WFK. A governing body has denied a plaintiff its right to build its project for no reason whatsoever, in spite of the fact that the applicant is in full compliance with all applicable law. The Court finds persuasive the plaintiff's argument that Flex Enterprises confirms that Louisiana law provides a cause of action to WFK and that this Court may grant it such relief.

Plaintiff's argument is also bolstered by the testimony of Luke Benner, a member of the Planning Commission, who testified at the state court trial that the Project complied in all aspects with the regulations of the Parish. Further, Mr. Benner testified that the Parish had no discretion when it came to approving the final permit of WFK.

Regarding defendant's arguments in opposition, the Court finds they are without merit. First, defendant asserts that the Project does not comply with the density requirement of the Parish. This argument is premised on the affidavit of the planner for the City of Hammond, John Dardis, who concludes that this 300 unit apartment complex is actually a 1200 unit complex. This conclusion is based on the flawed reasoning that each unit contains four bedrooms,

presumably to be rented by four unrelated students.  As such, each unit would have four vehicles, for a total of 1200 vehicles traveling to and from the university each day.  The Court finds this argument unpersuasive, as Hammond's zoning regulations provide that the definition of an "Apartment Unit" is "one or more rooms with private bath and kitchen facilities comprising an independent self-contained dwelling unit of at least 500 sq. ft. in a building containing more than one dwelling unit for rent."

Next, the Parish argues that there are issues of fact with respect to the drainage and sewage plan because the Consolidated Gravity Drainage District #1 of Tangipahoa Parish and the State of Louisiana, Department of Health and Hospitals were wrong in approving the Project. The Parish's arguments are supported by the affidavit of Hammond's City Engineer, T.C. Spangler, Jr. whose opinion on this issue the Court finds immaterial, as WFK was required to secure only the approval of the Drainage District the Board of Health and Hospitals, which they did.

Finally, the Parish argues that there is an issue of fact with respect to fire protection because Mr. Dardis, the Hammond City planner,  testified that the fire protection is inadequate. Once again, this Court finds his opinion is of no moment in this issue, as the Project's plan was approved by the State Fire Marshall, as required by the Regulations.

Further, the Court finds the Parish's reliance on La. R.S. 33:101.1 inopposite.  La. R.S. 33:101.1 states that approval or disapproval of a subdivision plat is not a ministerial function, subject to mandamus, but a legislative function which involves the exercise of legislative discretion by the planning commission.  This statute is inapplicable because the plaintiff is not

seeking to have the Parish approve or disapprove a subdivision plate.  It is of no consequence that the process by which a landowner obtains a building permit in the unincorporated parts of Tangipahoa appears is governed by regulations in the book entitled "Subdivision Regulations." This does not change the fact that WFK seeks a building permit and not a permit to subdivide land.

For the foregoing reasons, the Court finds that WFK is entitled to summary judgment, as it complied with all requirements and was entitled to final approval.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the plaintiff, WFK & Associates, LLC, is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that a Writ of Mandamus is issued ordering the Parish of Tangipahoa to grant final approval of WFK's Final Application for Subdivision Approval and to issue a building permit to WFK.

New Orleans, Louisiana, this 11th day of January, 2008.

_____
**G. THOMAS PORTEOUS, JR.
UNITED STATES DISTRICT JUDGE**